# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LEANDRE EARL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 11 C 8461 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Leandre Earl pleaded guilty to one count of armed robbery, 18 U.S.C. §§ 2113(a), (d), and 2 ("Count I"), and one count of using or aiding and abetting the use of a firearm in furtherance of a crime of violence, 18 U.S.C. §§ 924(c)(1)(A) and 2 ("Count II"). The court accepted Earl's plea and sentenced him to consecutive terms of imprisonment of 96 months on Count I and 120 months on Count II. Pending before the court is Earl's *pro se* petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. He argues that he was denied his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution when his attorney failed to advise him that he could plead guilty to Count I but proceed to trial on Count II. For the following reasons, Earl's motion is denied.

## BACKGROUND[1]

### I.     Underlying Facts

On May 19, 2009, Earl was arrested for participating in an armed bank robbery. (Dkt. 9 at 2.) Earlier that day he and his co-defendant Antonio Pickens were driving through the suburbs

---

[1] The following facts are taken from the government's exhibits to its response brief, which in turn are taken from documents introduced during Earl's criminal case. *See United States* v. *Earl*, 09 CR 453 (N.D. Ill. filed May 20, 2009). Earl does not contest any facts in the underlying suit.

1

of Chicago and picked up Harvel Harris, the third co-defendant. (Dkt. 9, Ex. D, Transcript of August 10, 2010 Change of Plea Hearing ("Change of Plea") at 27:16-28:4.) Harris urged Earl and Pickens to commit a robbery with him and they agreed, although Earl did not know at the time that they would be robbing a bank as opposed to an individual. (*Id.* at 28:21-24.) Harris produced two handguns, keeping one and handing the other to Pickens, and suggested that the three rob a Citibank in Calumet City, Illinois. (Dkt. 9, Ex. A, Federal Bureau of Investigation May 19, 2009 Interview of Earl ("FBI Inter.") at 3.) Harris stayed in the car while Earl and Pickens entered the bank. (*Id.* at 4.) In the bank, Pickens "pulled the gun" and yelled at everyone to put their hands up while Earl jumped over the teller counter and pulled money from the drawers. (Dkt. 9, Ex. B, Calumet City Police Department May 20, 2009 Statement of Earl ("Calumet Stmt.") at 2.) The two left the bank with over $23,000 in cash. (Dkt. 9 at 1.) Once outside, Earl and Pickens ran to their getaway car where Harris was waiting, and Earl began driving to the expressway. (Calumet Stmt. at 2.) Police pursued the car and Earl lost control of it, crashing into a median. (*Id.* at 3.) A gun fight between Harris and the police ensued. Earl was shot in the arm and fled into nearby woods. (*Id.*) Police arrested Earl after he surrendered some time later. (*Id.*)

## II. Guilty Plea and Sentencing

Following his arrest, Earl was charged with one count of armed robbery, in violation of 18 U.S.C. §§ 2113(a), (d), and 2, and one count of using a firearm in furtherance of a crime of violence, 18 U.S.C. §§ 924(c) and 2. (Dkt. 9 at 3.) Earl pleaded guilty to both counts on August 10, 2010. (Change of Plea at 19:9-20:17.) During the plea hearing, Earl disputed the prosecution's description of the circumstances leading up to the armed robbery. (*Id.* at 26:17-30:23.) Nevertheless, he admitted that he committed the robbery (*id.* at 19:18-22, 30:10-11,

2

33:22-34:4), and that he was aware prior to committing the crime that his co-defendants were armed. (*Id.* at 20:13-17, 28:13-20, 30:2-9.) The court accepted Earl's plea (*id.* at 34:5-12) and sentenced Earl to consecutive terms of imprisonment of 96 months on Count I and 120 months, the mandatory minimum, on Count II. (Dkt. 9 at 4.)

## LEGAL STANDARD

Relief under § 2255 "is reserved for extraordinary situations." *Hays* v. *United States*, 397 F.3d 564, 566 (7th Cir. 2005) (quoting *Prewitt* v. *United States*, 83 F.3d 812, 816 (7th Cir. 1996)). A district court must grant a § 2255 motion when the petitioner establishes "that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Hays*, 397 F.3d at 566-67 (quoting *Prewitt*, 83 F.3d at 816). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

The Sixth Amendment right to effective assistance of counsel applies in the context of entering a plea of guilty. *See Argersinger* v. *Hamlin*, 407 U.S. 25, 34, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972); *Missouri* v. *Frye*, -- U.S. ----, 132 S. Ct. 1399, 1405, 182 L. Ed. 2d 379 (2012). In order to establish constitutionally ineffective assistance of counsel, the petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* v. *Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To satisfy the first prong of the *Strickland* test, the petitioner must direct the court to specific acts or omissions of his counsel. *See United States* v. *Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). The court must then consider whether, in light of all

3

the circumstances, counsel's performance was outside the range of professionally competent assistance. *Id.* There is a strong presumption that counsel's performance was effective, *id.*, and the court must not let hindsight interfere with its review of counsel's decisions. *See Harris* v. *Reed*, 894 F.2d 871, 877 (7th Cir. 1990) (citing *Strickland*, 466 U.S. at 697). Under the second prong, to establish the reasonable probability that the outcome would have been different, the petitioner must show "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A court need not address both prongs of the *Strickland* test if one provides the answer; that is, if a court determines that the alleged deficiency did not prejudice the defendant under the second prong, the court need not consider the first prong. *See United States* v. *Fudge*, 325 F.3d 910, 924 (7th Cir. 2003) (citing *Matheney* v. *Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001)).

## DISCUSSION

Although Earl lists two grounds in his § 2255 petition for relief, they amount to one overriding argument: He was prejudiced because his counsel did not inform him that he could go to trial on Count II but plead guilty to Count I. Consequently, he argues, he pleaded to both counts and was sentenced to the mandatory minimum of 120 months on Count II to run consecutive to the 96 months he received on Count I. Had he been properly informed of his options, he argues that he would have gone to trial on Count II.

## I. Whether Counsel's Performance Was Objectively Reasonable

### A. Whether Counsel Informed Earl of the Possibility of Pleading to One Count

Earl claims that during the change of plea proceedings, his counsel "addressed the court and apologized for not informing [Earl] of [his] legal right to be able to plea[d] guilty to one count and go to trial on another." (Dkt. 1 at 4.) But there is no indication in the transcript from

4

the change of plea hearing that Earl's attorney, J. Clifford Greene, ever made such statement. (*See generally* Change of Plea.)

In response to Earl's § 2255 petition, the government also submits a notarized affidavit from Greene in which Greene states that he informed Earl "that he could plead to either one or both Counts" and that "if he did plead guilty to one of the Counts he could proceed to trial on the remaining Count." (Dkt. 9, Ex. E, Affidavit of J. Clifford Greene ("Greene Aff.") ¶¶ 3, 6.) Greene goes on to explain that he also advised Earl that if he pleaded guilty "to whichever Count that he believed carried the least amount of prison time while then expecting the Government to then dismiss the remaining count is unsound and is not based on federal criminal procedure." (*Id.* ¶¶ 4-6.) Greene informed Earl that it would be difficult for him to convince a jury he was not guilty of using or aiding and abetting the use of a gun in connection with a crime of violence once he pleaded guilty to armed bank robbery. (*Id.* ¶ 7.) It was objectively reasonable for Greene to enumerate Earl's options for him and then advise him on the benefits and drawbacks of each. There is no indication other than Earl's testimony that Greene failed to advise Earl of the possibility of only pleading guilty to one count, or that he ever apologized to the court for this omission.

### B.  Whether Counsel's Performance Would Have Been Objectively Unreasonable If He Had Failed to Advise Earl of This Right

If Greene did not tell Earl that he could plead guilty to only one count, as Earl contends, Earl still would have to show that this omission amounted to "incompetence under 'prevailing professional norms,' not [merely that] it deviated from best practices or most common custom.'" *Harrington* v. *Richter*, -- U.S. ----, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011) (quoting *Strickland*, 466 U.S. at 690). As the Seventh Circuit has observed, "It is not the normal practice of lawyers to advise their clients of every defense or argument or tactic that while theoretically

5

possible is hopeless as a practical matter." *Evans* v. *Meyer*, 742 F.2d 371, 374 (7th Cir. 1984); *see also St. Pierre* v. *Walls*, 297 F.3d 617, 628 (7th Cir. 2002) (counsel's performance not deficient for failure to discuss insanity defense with client where there was no indication of mental instability at time of guilty plea). For example, in *United States* v. *Harp*, No. CR00-3035, 2004 WL 1636251 (N.D. Iowa July 22, 2004), the court held that counsel's failure to advise his client to plead guilty to a drug count and go to trial on a firearm possession count did not amount to ineffective assistance. *Id.* at \*\*8-10. "Trial counsel reasonably believed that the 'normal' course was to go to trial on all counts, and advised his client accordingly," which the court found to be objectively reasonable. *Id.* at \*9. The court also noted in *Harp* that the government had indicated it was unwilling to dismiss the firearm possession.

Likewise, Greene stated in his affidavit that he believed it was unlikely that the government would drop Count II if Earl pleaded guilty to Count I (Greene Aff. ¶ 5), and that, in any event, Earl would be unlikely to prevail at trial on Count II after pleading guilty to Count I (*id.* ¶¶ 7-8). As discussed further below, it was by no means unreasonable for Greene to come to these conclusions. Thus, even if he had not informed Earl that he could plead only to the robbery count, that would not amount to professional incompetence leading the court to find Greene's performance was ineffective.

## II. Whether Earl Suffered Prejudice

Even assuming *arguendo* that Greene failed to inform Earl of this plea option and that this omission was objectively unreasonable, Earl would still have to demonstrate that he suffered actual prejudice. *Strickland*, 466 U.S. at 687. "[A] 'mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice.'" *Fudge*, 325 F.3d at 924 (quoting *Barker* v. *United States,* 7 F.3d 629, 633 (7th Cir. 1993)). He must "establish

6

through objective evidence that a reasonable probability exists that he would have gone to trial." *Berkey* v. *United States*, 318 F.3d 768, 773 (7th Cir. 2003). "In many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 203 (1985). This assessment involves a prediction of whether the defendant would have likely succeeded at trial. *See id.*; *see also Evans*, 742 F.2d at 374 (defendant alleging ineffective assistance regarding guilty plea required to show actual prejudice, which he could not do where it was "inconceivable" that he would have gone to trial, let alone succeeded, on defense that counsel did not discuss with him).

Earl states—with no supporting evidence—that he would have proceeded to trial on Count II if Greene had informed him that he could do so. As noted, Count II charged Earl with aiding and abetting the use of a firearm during a crime of violence under 18 U.S.C. § 924(c). A defendant may be found guilty of aiding and abetting the use of a firearm under § 924(c) if he had "advance knowledge that a confederate would use or carry a gun during the crime's commission." *Rosemond* v. *United States*, -- U.S. ----, 134 S. Ct. 1240, 1243, 188 L. Ed. 2d 248 (2014) (promulgating more favorable standard for criminal defendant than that previously used by Seventh Circuit that defendant could be found guilty of aiding and abetting § 924(c) violation if he knew *or should have known* firearm would be used in underlying drug crime or crime of violence).

It is clear that Earl would not have prevailed at trial on the aiding and abetting count. By pleading guilty to the robbery count, Earl admitted to not just bank robbery, but *armed* bank robbery. (Dkt. 9, Ex. C at 1-2.) He admitted to law enforcement officers not only his involvement in the robbery but that he knew his co-defendants both had firearms and that

Pickens took the firearm into the bank and brandished it once the robbery began. This admission was corroborated by statements that Earl voluntarily made to law enforcement officials after his arrest. (FBI Inter. at 3-4; Calumet Stmt. at 2.) Earl also admitted to the court during his change of plea hearing that he was aware when he robbed the bank that someone with him had a gun. (Change of Plea at 20:13-17.) Having made these admissions, and having pleaded guilty to armed bank robbery, there was virtually no chance that a jury would have acquitted him of aiding and abetting Pickens' brandishing of the gun during the bank robbery, even under the higher *Rosemond* standard.[2] Because no evidence suggests that Earl would have prevailed at trial on Count II, he did not suffer prejudice by Greene's alleged failure to inform him that he could plead guilty to Count I and proceed to trial on Count II.[3]

## CONCLUSION AND ORDER

Based on the foregoing discussion, Earl's petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is denied.

Date: June 26, 2014

*Joan N. Lefkow*

---

[2] At points during the change of plea proceedings, Earl suggested that he felt threatened or coerced into participating in the robbery and ensuing police chase. (Change of Plea at 28:3-30:23.) Greene explained to the court that he and Earl had discussed the possible defenses of coercion and duress with Earl but that Earl admitted to committing the essential elements of the offense. (*See id.* at 33:14-34:2.) The court agrees with Greene that these defenses would be unlikely to work as to Count II as he would be claiming contradictorily that he was guilty of armed robbery but that he was coerced into committing that crime with someone who was armed.

[3] The government also argues that Earl was liable for Harris's later use of the firearm to shoot at police during the car chase. Having found that Earl would not have prevailed on Count II by virtue of his involvement in the bank robbery, the court need not address this argument. The court does note briefly, however, that Earl was not prejudiced insofar as he believed that the government would have dropped Count II if he pleaded guilty to Count I. The government specifically argues that it would not have done so (dkt. 9 at 6, n.2), and Earl's counsel also attests that he advised Earl that it was highly unlikely for the government to drop Count II. (Greene Aff. ¶ 5.)

8